SCANNED at JCCC and E-mailed
11/16/16 by CM . 69 pages
date      initials   No.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

Michael G. Postawko Jr.   533578   )
(full name)              (Register No).  )
_____  )
_____  )
         Plaintiff(s).            )
                                  )
v.                                )  Case No. 15-04281-CV-C-NKL-P
                                  )  Amended Complaint
                                  )  Defendants are sued in their (check one):
George Lombardi, and Dave         )  ___ Individual Capacity
(Full name)                       )  ___ Official Capacity
Dormire, and Alan Earls, and      )  ✓ Both
Jay Cassady                       )
         Defendant(s).

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I.  Place of present confinement of plaintiff(s): Jefferson City Correctional Center

II. Parties to this civil action:
    Please give your commitment name and any another name(s) you have used while incarcerated.

    A. Plaintiff Michael Glenn Postawko Jr.   Register No. 533578
       Address Jefferson City Correctional Center, 8200 No More Victims Rd., #M.P Jefferson City, Mo. 65101-4539

    B. Defendant George Lombardi

       Is employed as Director of Missouri Department of Corrections
       CONTINUED ON P.5

For additional plaintiffs or defendants, provide above information in same format on a separate page.

1

Case 2:15-cv-04281-NKL   Document 75   Filed 11/16/16   Page 1 of 20

III. Do your claims involve medical treatment? Yes **X** No ____

IV. Do you request a jury trial? **SEE P. 5** Yes ____ No ____

V. Do you request money damages? Yes **X** No ____

State the amount claimed? **DEFER TO COURT** $ _____ / _____ (actual/punitive)

VI. Are the wrongs alleged in your complaint continuing to occur? Yes **X** No ____

VII. Grievance procedures:

A. Does your institution have an administrative or grievance procedure?
Yes **X** No ____

B. Have the claims in this case been presented through an administrative or grievance procedure within the institution? Yes **X** No ____

C. If a grievance was filed, state the date your claims were presented, how they were presented, and the result of that procedure. (Attach a copy of the final result.)
Informal Resolution Request (IRR) was received by the caseworker on May 8, 2014; is the first step in our grievance procedure and was — CONT'D. SEE P. 5

D. If you have not filed a grievance, state the reasons.
N/A

VIII. Previous civil actions:

A. Have you begun other cases in state or federal courts dealing with the same facts involved in this case? **SEE P. 6** Yes **X** No **X**

B. Have you begun other cases in state or federal courts relating to the conditions of or treatment while incarcerated? **SEE P. 6** Yes **X** No **X**

C. If your answer is "Yes," to either of the above questions, provide the following information for each case.

(1) Style: **Postawko, Michael**          **Corizon, LLC**
            (Plaintiff)                    (Defendant)
(2) Date filed: **July 14, 2016**

(3) Court where filed: U.S. District Ct., Western District of Mo.

(4) Case Number and citation: 16-04219-CV-C-NKL-P

(5) Basic claim made: Deliberate indifference to and inadequate treatment, serious medical need

(6) Date of disposition: Pending

(7) Disposition: Pending
(Pending) (on appeal) (resolved)

(8) If resolved, state whether for: still Pending/recently filed
(Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX. Statement of claim:

A. State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

1- Plaintiff is 55 year old male, and life long nonsmoker.
2- Plaintiff has been in the Mo.D.O.C for 21 years, 2 months
3- Plaintiff has life long severe Allergic reactions to tobacco products including tobacco that is not burning.
4- Plaintiff has Raynaud's Disease and receives Amlodipine Besylate for this from Corizon, LLC the medical services provider for the Mo. D.O.C.
5- Plaintiff has received other medications for Raynaud's that became ineffective and were changed by Corizon staff.
6- Raynaud's Disease constricts blood - CONT'D, SEE P.7

B. State briefly your legal theory or cite appropriate authority:

1- Plaintiff has a severe life long tobacco allergy and other medical conditions exacerbated by secondhand smoke (SHS).
2- These conditions all require a "smoke free" environment as part of their treatment.
3- All of the Defendants have exposed the Plaintiff to SHS by allowing the custom of giving smokers free reign to smoke at will indoors and outdoors, to continue openly and flagrantly.
4- The Defendants have acted with -CONT'D. SEE P. 13-

3

X. Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.

grant the Plaintiff relief that is compensative, punitive, and injunctive (temporary and permanent), and any other relief this Court may deem appropriate

XI. Counsel:

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name. N/A

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action? Yes X No

If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.
Elizabeth Carlyle - P.O.Box 866, Columbus, Mississippi, 39703
Jason Henry - P.O.Box 1619, West Plains, Mo., 65775
Family contacted several others via E-mail - do not have specific info.

C. Have you previously had a lawyer representing you in a civil action in this court?
I currently have one on another pending case. Yes _____ No X

If your answer is "Yes," state the name and address of the lawyer.
pending case no. 16-04219-CV-C-NKL-P represented by Anthony Rothert, ACLU of Mo., 454 Whittier St., St. Louis, Mo. 63108

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed (signed) this __16 7h__ day of __November__ 20_16_.

Subscribed and sworn to before me this _16_ day of _Nov_ in the year _2016_.

*[Signature: Chris Marks]*

CHRIS MARKS
My Commission Expires
December 28, 2018
Cole County
Commission #14632295

*[Signature(s) of Plaintiff(s)]*

4

II. Parties to this civil action: from P.1:

C. Defendant Dave Dormire

Is employed as Deputy Division Director, Division of Adult Institutions, Missouri Department of Corrections (Mo.D.O.C.)

D. Defendant Alan Earls

Is employed as Deputy Division Director, Division of Adult Institutions, Missouri Department of Corrections (Mo.D.O.C.)

E. Defendant Jay Cassady

Is employed as Warden at Jefferson City Correctional Ctr., Missouri Department of Corrections (Mo.D.O.C.)

IV. Do you request a jury trial? : from P.2:

Plaintiff does not at this time. However, he may change his mind and request jury trial after discovery is completed.

VII. Grievance(s) procedures: from P.2:

C. Followed by a grievance then a grievance appeal. The no. for all 3 steps is JCCC 14 1064. The nature of this complaint is "non-smokers have no rights..." This is the primary grievance of this civil action. And is attached (the final response, dated 8-27-2014) as attachment #0002-A. As per the Missouri Department of Corrections Offender Grievance Policy SOPD 5-3.2 the Grievance Appeal is the final stage of the grievance procedure, therefore the Response to the Grievance Appeal does in fact "exhaust" the procedure.

C.(2) - Attachment #0002-C is the Final Response to Grievance no. JCCC 14 1056 (Grievance Appeal Response) that was

5

exhausted, dated Aug. 27, 2014. It's IRR was received by staff on 5-13-14. It's nature of complaint is "sleep deprivation as a result of a smoking cellmate," who smoked at all hours of night and day with no regard at all for his nonsmoking cellmate. It was filed prior to the primary grievance of this civil action and is evidence in support of plaintiff's allegations in this complaint.

C.(3) - Attachment #0002-B is the final Response to Grievance Appeal no. JCCC 14 999 that was exhausted, dated July 23, 14 and filed prior to the primary grievance in this civil action. It's nature of complaint is "... removed from honor wing..." unfairly without getting a conduct violation, but as a result of a smoking cellmate who complained to caseworkers. This grievance is evidence in support of plaintiff's allegations in this complaint.

VIII. Previous civil actions: from P. 2:

A. and B.- Besides this case Plaintiff has one other case active that is also in this same district. It is case no. 16-04219-CV-C-NKL-P for inadequate treatment of a serious medical need (HEPATITIS C). Though both of these cases will involve the Plaintiff's medical files, and conditions, and etc. they are two distinct and separate issues. This is why Plaintiff answers YES and No to sections 8 (A.) and (B.). These are the only two cases currently in federal courts or any and all courts, and the only two cases Plaintiff has ever

filed in federal courts.

~~m.P.~~

IX. Statement of claim: from P.3:

A. (6)-CONT'D.- vessels, per information published by the American Medical Association in their "complete Medical Encyclopedia, Copyright 2003 by the A.M.A., P. 1053. SEE ~~[redacted]~~ M.R attachment #0001, P. numbered 1053 Raynaud disease.

7- Nicotine is also a blood vessel constrictor, per the A.M.A. in their encyclopedia - attachment #0001, P. numbered 1053 under Raynaud disease.

8- Plaintiff has been treated for Esophageal reflux by the Mo- D.O.C.'s medical services provider for 15 years, or so.

9- Exposure to cigarette smoke worsens the acidic effects in the stomach, per the A.M.A.'s encyclopedia P. 526, under E, sophagel reflux Diagnosis and Treatment, paragraph 2, SEE attachment #0001.

10- Plaintiff has had his medications changed and dosages increased several times for his Esophageal reflux because they ~~Se~~ m.P. became ineffective.

11- Plaintiff has also been issued a wedge-pillow to help him with Esophageal reflux attacks during sleep by medical staff here at this prison.

12- Plaintiff has been told by medical staff here that a previous chest X-ray shows scarring of lung tissue consistent with Em-

7

Case 2:15-cv-04281-NKL   Document 75   Filed 11/16/16   Page 7 of 20

physema.

13- Plaintiff is Hepatitis C positive.

14- Plaintiff has been diagnosed with inactive tuberculosis in 1996.

15- Plaintiff recently has experienced difficulty in breathing and receives Theophylline for this from medical staff.

16- Plaintiff has experienced severe chest pains for 7, or so years.

17- For his tobacco allergies Plaintiff receives: 1) SOD CHL Nasal Spray, 2) allergy visine, 3) citrizine HCL, 4) Propranolol HCL, 5) tylenol, and sometimes OTC Chlorphen.

18- In this complaint's attachments Plaintiff has provided affidavits from family members with personal knowledge of his life long struggles in being close to someone smoking. Attachments 0004, 0005.

19- Affidavits are also provided from inmates in this prison (some may have been transferred) with personal knowledge of living in this M.P. prison with or around smokers and etc. 0019 - 0022.

20- Nonsmokers are by far a minority group at this prison.

21- In a very harsh tone, F.U.M. Angela Schmutz replied "so what!" when I spoke to her of my trouble celling with smokers.

22- Plaintiff was sanctioned by way of removal from the honor wing as a result of confrontations with 2 different smoking cellmates even though he received no conduct violation nor the threat of one, and maintained honor wing eligibility throughout, by Mrs. Schmutz. SEE attachments #0002-B, #0010, #0011.

23- Further threats of similar sanctions in writing from Mrs. Schmutz SEE attachment #0011, were made.

24- After several weeks in nonhonor wing cells Plaintiff is moved

8

Back into honor wing cell with Rick Brown a heavy smoker. SEE attachment #0002-C.

25- Approx. 3 months later is moved into a different honor wing (should read "Plaintiff is moved into...") cell with a non-smoker.

26- Approx. 4 1/2 months later the nonsmoker is without notice removed from this cell into another cell in the same wing. Against his will and mine.

27- Then a smoker was moved in with the Plaintiff.

28- Most staff here at Jefferson City Corr. ctr. (JCCC) are themselves smokers and sympathize with fellow smokers.

29- The indoor smoking limitations at JCCC are often un-inforced and "over-looked."

30- It is impossible to enforce a no smoking indoors rule when you let prisoners buy massive amounts of tobacco products on a weekly basis, and possess massive ~~amounts~~ M.P. amounts of tobacco at any given time, then confine them indoors so many hours of every day.

31- Even in "ad seg" housing units that are completely sealed-off from the rest of the prison where prisoners stay locked in their cells 24 hours a day except for 3 showers per week + 3, 1 hour exercise periods per week tobacco and lighters still find their way in there.

32- Non smokers that complain are dealt with as the problem.

33- A nonsmoking honor wing and nonsmoking non-honor wing where inmates cannot buy or posses any tobacco products is easy and cost free to implement - prison officials refuse this at every attempt.

9

34- Many smokers have stated "The only way they can ever stop smoking is if they stop selling tobacco!"

35- The record of conduct violation reports at JCCC will bear the truth that violations of no smoking rules does occur in spite of the rules, and upon information and belief similar conditions exist in all of Missouri's prisons.

36- Per policy at JCCC there are smoking restricted areas outside too.

37- Plaintiff has had several cellmates that were so comfortable smoking in the cell that they would not smoke outdoors.

38- All cells here at JCCC have 4 concrete walls, concrete floor and ceiling, solid steel door with a small pane of glass so that they seal "nearly" air-tight.

39- Plaintiff's tobacco allergy symptoms exist every day of the year and are not seasonal, since being in prison.

40- Plaintiff's Raynaud's medication had to be changed once - became ineffective.

41- These conditions in 39, 40 above continue to worsen.

42- Respiratory infections occur often - last for weeks at a time all year.

43- Secondhand smoke's effects are extremely harmful, debitating, and fatal.

44- Exposure to secondhand M.P. smoke is tortuous and agonizing to someone with a severe allergy to tobacco as with the Plaintiff.

45- After 20 or so years of exposure to secondhand smoke in the Mo.D.O.C. it is reasonable to say physical damage has occurred.

46- Exposure to secondhand smoke is a serious threat to Plaintiff's future health - supported in section IX (B) of this complaint.

47- The prison's Heating, Ventilation, Air-Conditioning (HVAC) systems circulate air throughout each housing unit - an air-born illness in short

10

order infects nearly everyone in the housing unit regardless of which of the housing units 4 wings the illness originates in-supported by the U.S. Surgeon General's report (2006), chapters 3 (P.P. 86-88), 4 (P. 154), 10 (P.P. 586, 628-29, 634).

48- In 55 FR 25874 it is reported there are approx. "3800 lung cancer deaths per year among nonsmokers..." in the U.S. attributable to Environmental Tobacco Smoke. SEE attachment #0008.

49- Plaintiff is a pro se litigant.

50- Defendant Lombardi, Defendant Dormire, Defendant Earls, Defendant Cassady have each, while acting under color of state law allowed the long established custom to continue in Missouri's prisons by each one's own omissions, of allowing smokers to smoke virtually at will indoors and outdoors without regard for their own health or anyone else's, in spite of Mo.D.O.C.'s own Policy and smoking limitations, for at least 2 decades that Plaintiff has first hand witness to, thereby exposed Plaintiff to the many risks involved from exposure to secondhand smoke, and have done so without regard for Plaintiff's health and extinuating and existing medical conditions. All 4 Defendants are long time employees of Mo.D.O.C., are in administrative positions, and educated men. It is reasonable to believe they each possess the knowledge of cigarette M.P. smoking's inherent health risks, and the risks of exposure to secondhand smoke. Plaintiff supports these claims with every preceding and following word in this complaint.

51- Defendant Lombardi, a smoker, ~~==============~~ M.P. has allowed smokers freedom in smoking even against his departments limitations of such, for all of his time as a Mo.D.O.C. employee at the risk of the health of others including the Plaintiff and absolutely could put a stop to this but chooses not to.

11

52-Defendant Dormire, a smoker, was warden at M.S.P. and JCCC for many years and allowed smokers freedom to smoke at will in restricted areas at the risk of others health including Plaintiff and is directly responsible for this custom to continue so long unabated and absolutely could put a stop to it but chooses not to.

53-Defendant Earls is a Mo. D.O.C. administrator is guilty of the same things as cited above in 51-52, and responded to all 3 grievance appeals. SEE attachments #0002 A,B,C.

54-Defendant Cassady is guilty of the same things cited above in 51-52 and Plaintiff wrote to him of some of these issues. SEE attachments 0010, 0011, 0013, 0014, 0014A.

55-Notice for the Preservation of evidence in this case was* to the Mo. Attorney General on Feb. 27, 2015 and to Defendant Lombardi on March 26, 2015. SEE attachment #0007. *sent to...

56-Attachment #0003 is 8 different Medical Services Requests copies, 8 pages.

57-Attachment #0006 is 4 pages from Merck's Home Health Manual and speaks very similar of Raynaud's disease as in the attachment #0001 (A.M.A. Encyclopedia). SEE Raynaud's Syndrome and Mixed Connective Tissue Disease.

58-Attachment #0009 is R.S.Mo. 191.767 and gives authority to Defendant Cassady over smoking/nonsmoking designations.

59-Attachment #0012-letter to A. Schmutz -problems with smokers.

60-Attachment #0015-letter to A. Schmutz - request nonsmoking "cellie".

61-Attachments #0016, 0017-letters S. Lairmore, CCA, denying my requests for nonsmoking "cellie" -sent me 2nd copy few days latter to reinforce his point.

▲M.P. 62- Attachments #0018 and 0018A are a letter to JCCC's Records office and it's response - request for proper forms, to preserve evidence.

63- Mo.D.O.C. has been sued several times by prisoners for secondhand smoke issues - indicative of a problem.

64- There are so many cases in federal courts brought by prisoners - conclusive evidence that problems exist in our prisons over secondhand smoke.

65- Defendants have lied stating "Mo. D.O.C. ban tobacco" - how can it be banned when its sold in the inmate canteen and can be possessed by inmates?

66- Defendants have lied stating ~~[redacted]~~ M.P. "Every effort is made to ensure that policy is enforced..." - Discovery will show this conclusively.

IX (B) State briefly your legal theory... : From P.3:

4- CONT'D. - deliberate indifference to Plaintiff's serious medical needs.

5- Plaintiff shouldn't have to take 5 allergy medications daily so that smokers can smoke.

6- Plaintiff wouldn't need any allergy medications in a smoke free ~~[redacted]~~ M.P. environment.

7- Attachments #0010, 0011, 0013, 0014, 0014-A - are letters Plaintiff wrote the to the warden and the constituent services office - 0010, 0011 are letters from Angela Schmutz acknowledging ~~[redacted]~~ M.P. warden Cassady got my letters of troubles with smoking cellmates.

8- Letters to warden and no remedy supports deliberate indifference in <u>Lehn v. Holmes</u>, 364 F.3d 862 (2004); <u>Wilson v. Seiter</u>, 501 U.S. 294, S.Ct.

13

111 S.Ct 2321 (1991).

9- In this case and so many SHS cases from prisoners it is alleged that no smoking M.P. policies are often uninforced.

10- Failure to enforce policy supports deliberate indifference in <u>Talal v. White</u>, 403 F.3d 423 (2005); <u>Caldwell v. Hammonds</u>, 53 F.Supp. 2d 1,9 (1999); SEE Hn 8,9 in <u>United States v. Gaubert</u>, 499 U.S. 315 (1991).

11- In M.P. <u>Atkinson v. Taylor</u>, 316 F.3d 257 (2003) deliberate indifference is also supported when "... failure to move prisoner from cell with smoker after Plaintiff complained..." - multiple letters in attachments show that I had same problem - even after Mrs. Schmutz promised me a nonsmoking cellmate.

12- All Defendants hold power to make policies - deliberate indifference is shown when they don't respond to deficiencies in Policy and it's enforcement, supported in <u>Atkinson v. Taylor</u>, 316 F.3d 257 (2003); <u>Helling v. Mckinney</u>, 509 U.S. 25; 113 S.Ct. 2475; 125 L.Ed. 2d 22 (1993).

13- Deliberate indifference is also supported when an official* knows of and disregards an excessive risk to inmate health or safety just as in this case and <u>Barney v. Pulsipher</u>, 143 F.3d 1299 (1998); <u>Farmer v. Brennan</u>, 511 U.S. 825; 114 S.Ct. 1970 (1994). *official

14- Plaintiff alleges conditions of exposure to SHS for his 2 decades in Mo.D.O.C.- long duration of a condition = prior knowledge of serious health threat supported by <u>Murphy v. Mo.D.O.C.</u>, 372 F.3d 979 (8th Cir. 2004); <u>Wilson v. Seiter</u>, 501 U.S. 294; 111 S.Ct. 2321 (1991).

15- When a susceptible prisoner is confined in a small enclosed cell with a heavy smoker for long span of time symptoms may transform into serious ongoing medical need - is the case, and is supported in <u>Atkinson v. Taylor</u>, 316 F.3d 257 (2003); <u>Helling v. Mckinney</u>, 509 U.S. 25; 113 S.Ct 2475 (1993).

16- Plaintiff alleges his existing medical conditions are exacerbated by any exposure to SHS and even without such, SHS poses serious risks

14

and potential fatality - with or without exacerbations SHS exposure can become "serious medical need"-supported in (with/with-exacerbations) Johnson v. Pearson, 316 F.Supp. 2d 307 (2004); Reilly v. Grayson, 310 F.3d 519 (2002); Helling v. Mckinney, 509 U.S. 25; 113 S.Ct. 2475 (1993); Surgeon General's Report (2006); A.M.A. Encyclopedia (2003), attachment #0001.

17- In Gill v. Smith, 283 F.Supp. 2d 763 (2003) it was held that the existence of policy = "knowledge of risks" (this is SHS case) - all 4 defendants being administrators have full understanding of Mo.D.O.C. Policy.

18- Futhermore all defendants could not reasonably deny knowledge of smoking's and SHS's inherent serious risks.

19- Plaintiff alleges he suffers many symptoms as result of exposure to SHS and that these continue to worsen, and his overall health continues to worsen. And, exposure to SHS is serious risk to future health and is supported in Warren v. Keane, 196 F.3d 330 (1999); Kelley v. Hicks, 400 F.3d 1282 (2005); Helling v. Mckinney, 509 U.S. 25; 113 S.Ct. 2475 (1993).

20- Plaintiff has alleged smoking limitations at JCCC are often unenforced and overlooked - large volume of prisoner SHS cases gives much credibility to Plaintiff's allegations. SEE Talal v. White, 403 F.3d 423 (2005). It's cited as recklessness in Farmer v. Brennan, 511 U.S. 825; 114 S.Ct. 1970 (1994).

21- Plaintiff has provided evidence he complained to Prison Officials and they did nothing - again large volume of prisoner SHS cases citing this trend lends credibility to Plaintiff's claims and = deliberate indifference; As in Jett v. Penner, 439 F.3d 1091 (2006); Wilson v. Seiter, 501 U.S. 294; 111 S.Ct. 2321 (1991); Alexander v. Perrill, 916 F.2d 1392 (1990).

22- Further, a judge stated (prison officials "can't just sit on your duff and not do anything" to prevent violations of rights) in Alexander v.

15

Case 2:15-cv-04281-NKL   Document 75   Filed 11/16/16   Page 15 of 20

Perrill, 916 F.2d 1392 (1990); affirmed by Helling v. Mckinney. Seems as if this judge has seen a lot of which he speaks.

23- In SHS cases it is not necessary to prove a serious health risk - this fact specifically stated in many cases like Powers v. Snyder, 484 F.3d 929 (2007); Steading v. Thompson, 941 F.2d 498 (1991).

24- Plaintiff alleges nonsmokers in Missouri's Prisons have no rights under current conditions and customs - one court addresses this fact in Brashear v. Simms, 138 F.Supp.2d 693, 694-95 (2001) (upholding ban on tobacco as a rational means of protecting nonsmokers from ETS; holding smoking is not a disability under Americans with Disabilities Act).

   (b)- through these proceedings Defendants have repeatedly stated "Missouri has a ban on tobacco in it's prisons" - this is an outright lie as they sell it to inmates in the inmate canteen in every Missouri prison.

   (c)- Plaintiff offers as evidence of the nonsmokers in Mo.'s prisons attachments # 0010, 0011, 0016, 0017, 0019-22.

25- This is a small sample of prisoner SHS cases where a specific right is cited, or upheld, or etc. - plaintiff alleges these are all violated routinely in Mo.'s prisons:

   (a)- Jett v. Penner, 439 F.3d 1091, 1098 (2006)- administrators fail to respond to inmate's requests for help

   (b)- Davis v. New York, 316 F.3d 93, 100-01 (2002)- prisoner housed for years in heavy smoke area - caused many health problems

   (c)- Reilly v. Grayson, 310 F.3d 519, 521 (2002)- damages awarded where officials disregarded medical recommendations for smoke

16

Case 2:15-cv-04281-NKL   Document 75   Filed 11/16/16   Page 16 of 20

free environment of asthmatic plaintiff

(d)- <u>Alvarado v. Litscher</u>, 267 F.3d 648, 649-53 (2001) - no smoking rules were not enforced

(e)- <u>Warren v. Keane</u>, 196 F.3d 330, 332-33 (1999) - claim of "atmosphere permeated with smoke" - "creates serious long-term health risks"

(f)- <u>Helling v. Mckinney</u>, 509 U.S. 25, 33-35; 113 S.Ct. 2475 (1993) - overruled prior decision holding that exposure to ETS is not "punishment" unless the prisoner has an allergy or other medical condition - plaintiff in this case does however, have tobacco allergy and other medical conditions

(g)- <u>McIntyre v. Robinson</u>, 126 F.Supp. 2d 394, 406 (2000) - current standards of decency, in re. to society and prisoners

(h)- <u>Johnson v. Pearson</u>, 316 F.Supp. 2d 307, 317-18 (2004) - holding policy making accommodating nonsmokers the last priority in housing, "...is in direct conflict with <u>Helling</u>; defendants were 'only concerned with administrative convenience.'"

(i)- <u>Reilly v. Grayson</u>, 310 F.3d 519 (2002) - "...right is broader than not being celled with a smoker..."

(j)- (medical cases-not SHSI- <u>Estelle v. Gamble</u>, 429 U.S. 97, 104; 97 S.Ct. 285 (1976); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94; 127 S.Ct. 2197 (2007) - The Supreme Court has stated that "███████ M.A deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'...proscribed by the Eighth Amendment." - this accurately describes many of the plaintiff's allegations.

26- There is no guaranteed right to smoke as in <u>Brashear v. Simms</u>, 138 F.Supp. 2d 693 (2001); <u>Addison v. Posh</u>, 961 F.2d 731 (8th Cir. 1992).

17

27- Plaintiff avers that prisoners will smoke indoors regardless of rules and consequences - is corroborated in <u>Moilanen v. Berghuis</u>, 2012 U.S. Dist. LEXIS 161798.

28- Plaintiff alleges that Mo.D.O.C. may sell tobacco products to inmates in all of it's inmate canteens for improper motives - will support this with inmate canteen records in discovery that show tobacco products sales generate alot of income.

29- Plaintiff believes under the Americans With Disabilities Act (ADA) and Section 504 of the Rehabilitation Act he has the right to be free from all discriminations based on diabilities, including discriminations in treatment off medical issues covered under these two Acts - Plaintiff is permanently partially disabled by the Mo. Division Of Workers' Compensation Court - Injury no. 95-181258, date 11-14-95; And does not receive the proper treatment of the medical issues stated in this claim - they are all covered in both of these Acts.

30- Other symptoms plaintiff regularly suffers: daily runny nose, daily headache, itchy watery eyes, frequent sore throat, frequent ear infections, nausea, daily coughing and sneezing, chest pains, vision rapidly growing worse, risk of cancer and heart disease substantially increased, sleep deprivation, M.E lightheadedness, dizzyness, blackouts, weakened autoimmune system, persistence and worsening of these symptoms, lack of adequate medical care of all cited above.

31- Other sufferage: conflicts with smokers have cost many months in ad seg and loss of other earned privileges, and various harassment by staff and inmates that smoke.

32- Discovery will show that inmates and staff regularly ignore the smoking limitations policy.

33- Proof that addiction and addictive mentality are rampant at JCCC - between 10-7-16 and 10-21-16 we had 10 drug overdoses.

18

# CERTIFICATE OF DOCUMENTATION (ATTACHMENTS)

There are twenty-two Attachments attached to Civil Rights claim no. 15-04281-CV-C-NKL-P. #0001, 7 PP. - A.M.A. Encyclopedia; #0002-A, 0002-B, 0002-C, 3 PP. - grievance appeal responses; #0003, 8 PP. - medical service requests; #0004, 0005, 2 PP. - affidavits of family; #0006, 4 PP. - Merck Home Health Manual; #0007, 8 PP. - Notice of Preservation of Evidence; #0008 - 55 FR 25874 (1990); #0009 - R.S.Mo. 191.767; #0010, 0011, 2 PP. - letters from Angela Schmutz, F.U.M.; #0012, 0013, 0014, 0014-A, 0015, 5 PP. - handwritten from the Plaintiff to Mo.D.O.C. staff; #0016, 0017, 2 PP. - letters from Stacy Lairmore, CCA; #0018, 0018-A, 2 PP. - letter and it's response to this prisons Records office; #0019, 0020, 0021, 0022, 4 PP. - affidavits of other prisoners.

Plaintiff swears under penalty of the Laws of the United States that each document listed above, and all of it's counterparts, and etc. are in fact exactly what each one claims that it is; was received from who the Plaintiff claims he received it from; and or, were sent to who the who the Plaintiff claims he sent each one to; and are true and accurate copies of the originals.

Executed on November 16, 2016.

_____
Notary Signature

CHRIS MARKS
My Commission Expires
December 28, 2018
Cole County
Commission #14632295

Subscribed and sworn to before me this 16 day of Nov in the year 2016.

_____
Michael G. Postawko Jr.
#533578
Jefferson City Corr. Ctr.
8200 No More Victims Rd.
Jefferson City, Mo. 65101

# Certificate of Service

I hereby certify that on November 16, 2016 I did sub- a copy of the foregoing to the prison's librarian to be filed with the Clerk of the Court using the CM/ECF electronic notification system, and placed a copy of the foregoing in the prison's mailbox for U.S. Postal Service to:

Mo. Attorney General
attn. Nathan Wienert
Supreme Court Bldg.
207 W. High St.
Jefferson City, Mo. 65102

_Michael G. Postawko Jr._

## STATEMENT OF AFFIDAVIT

I swear under penalty of the Laws of the United States is true, and as accurate as I can possibly make it to be, and accurately copied. Executed on November 16, 2016.

_Chris Marks_
Notary Signature

CHRIS MARKS
My Commission Expires
December 28, 2018
Cole County
Commission #14632295

Subscribed and sworn to before me this 11 day of Nov in the year 2016

Michael G. Postawko Jr.
#533578
Jefferson City Corr. Ctr.
8200 No More Victims Rd.
Jefferson City Mo.
65101